**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| GENEVA LANGWORTHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-1291-MLG-KRS |
| | ) | |
| EDWARD ALCON, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER TO SHOW CAUSE**

THIS MATTER is before the Court *sua sponte* upon review of the docket. For the reasons set forth below, the Court **ORDERS** Plaintiff to **SHOW CAUSE** why her claims against Defendant Alcon in the currently operative state court complaint ("Complaint") (**Doc. 1-2**) should not be dismissed by filing an amended complaint that alleges those claims in compliance with the Federal and Local Rules of Civil Procedure.

**BACKGROUND**

The Court incorporates herein the discussion of the facts and procedural history of this case set forth in the Court's Order Striking Pro Se Motions And Permission To File Electronically (Doc. 62). For present purposes, the Court sets forth the three claims alleged in the Complaint against Defendant Alcon, two based on the Fourth Amendment and one based on the Equal Protection Clause of the Fourteenth Amendment.[1]

[1] Plaintiff's equal protection claim arises directly under the Fourteenth Amendment, while her Fourth Amendment claim technically also arises under the Fourteenth Amendment although indirectly through the Supreme Court's incorporation of the Bill of Rights into that Amendment. *See Colbruno v. Kessler,* 928 F.3d 1155, 1161 (10th Cir. 2019) (explaining that "almost any federal constitutional claim against state officials is, strictly speaking, a claim under the Fourteenth Amendment," but that "it is common to say," for the sake of clarity, "that a claim is based, say, on the First Amendment, Fourth Amendment, Sixth Amendment, or Eighth Amendment" (internal citations omitted)). Also, although it is not necessary for Plaintiff to allege a legal theory in the Complaint, the vehicle for Plaintiff to bring her constitutional claims is 42 U.S.C. § 1983. *See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (stating that 42 U.S.C. § 1983 provides a cause of action against state officials who violate constitutional or other federally

The first Fourth Amendment claim is alleged in the following two paragraphs:

> 1. In the fall of 2021, Deputy Edward Alcon trespassed repeatedly on Geneva Langworthy's property at 12 1/2 Towhee Lane without probable cause, in violation of the Plaintiff's 4th amendment right against unlawful search and seizure. Deputy Alcon searched for Ms. Langworthy ON HER OWN PROPERTY with a powerful flashlight. There was no warrant for her arrest, and she was on her lawful property. The outrageous actions of Alcon have yet to be explained.
>
> On the same date, Alcon and Tatum both drove their vehicles, with Tatum leading the way, over to Ms. Langworthy's house on Jaybird Lane. Alcon and Tatum parked, illegally entered Ms. Langworthy's property, and walked around inside her yard, shining their flashlights into the house and around the grounds in an outrageous and illegal warrantless search of her property, with no hint of probabl[e] cause.

(Doc. 1-2 at 2-3).

The second Fourth Amendment claim is set forth in the following three paragraphs:

> 2. In the fall of 2022, Deputy Alcon trespassed on Jaybird Lane, a private road, in the company of local buffoon Todd Tatum, a fraud and a liar who has been unlawfully posing as "security" for Ute Park since 2015. Tatum is not licensed to be a security guard in New Mexico, nor does he have any right to claim to be that. Tatum routinely trespasses on all the roads in Ute Park with no authority whatsoever, and this fraud will be the subject of a new cause of action in the near future.
>
> Alcon trespassed on Jaybird Lane in the fall of 2022 with fraudster Tatum in his patrol vehicle, and spotlighted Ms. Langworthy in her yard as he drove past. This caused emotional distress to Ms. Langworthy as well as violating her property rights and her right to quiet enjoyment. It's also harassment. Ms. Langworthy has a video recording of the event, which she will be petitioning the court to receive into evidence.

---

protected rights); *Pueblo of Pojoaque v. New Mexico*, 214 F. Supp. 3d 1028, 1075 (D.N.M. 2016) ("Section 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights."), *aff'd*, 863 F.3d 1226 (10th Cir. 2017).

> Langworthy trespassed Todd Tatum from Jaybird Lane shortly after that, sending a copy of the letter to the Colfax County Sheriff.

(*Id.* at 3).

Plaintiff's third and final claim under the Equal Protection Clause of the Fourteenth Amendment is set forth in the following two paragraphs:

> 3. In the winter of 2023, Ms. Langworthy attempted to press charges against Tatum for continuing to trespass on her road and to harass and intimidate her. The call was assigned to Alcon, who completely denied assistance or protection to Ms. Langworthy. Alcon said he didn't know whether the road was private. This is gross incompetence.
>
> Denial of equal protection occurs when one person is treated differently than another, under color of law. When Tatum called in Deputy Alcon, the deputy hunted Ms. Langworthy down on her own property, in a warrantless search in violation of her 4th Amendment rights. When Langworthy called on Alcon to enforce the trespassing of Todd Tatum from Jaybird Lane, Alcon did not even take a complaint. Ms. Langworthy demands relief and protection.

(*Id.* at 3-4).

**DISCUSSION**

The Court has identified the following deficiencies, and orders Plaintiff to show cause why the Court should not dismiss the Complaint for failing to allege facts showing that Plaintiff is entitled to relief under either the Fourth Amendment or Fourteenth Amendment. *See* FED. R. CIV. P. 8(a)(2); *Lowrey v. Sandoval Cnty. Children Youth & Families Dep't,* No. 23-2035, 2023 WL 4560223, at *2 (10th Cir. July 17, 2023) (unpublished) ("Given a referral for non-dispositive

pretrial matters, a magistrate judge may point out deficiencies in the complaint … [and] order a litigant to show cause[.]" (citing 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a))).[2]

### A. FOURTH AMENDMENT CLAIMS

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. AMEND. IV. The cursory allegations in the Complaint, quoted in full above, may fit the description of "short and plain," but they do not provide sufficient details to satisfy the further requirement in Rule 8 that the short and plain statement "show[ ] that [Plaintiff] is entitled to relief." FED. R. CIV. P. 8(a)(2). The Complaint's allegations state only that Alcon trespassed on Plaintiff's property, without any facts to indicate that, in doing so, Alcon subjected Plaintiff to a search or seizure of her person, house, papers, or effects. Indeed, the above-quoted allegations may not even be sufficient to show that a trespass occurred. The Court of Appeals of New Mexico has defined trespass as a physical invasion of property that directly infringes on another's right of possession. *Dolan v. Fed. Emergency Mgmt. Agency*, 760 F. Supp. 3d 1200, 1247 (D.N.M. 2024) (citing *Padilla v. Lawrence*, 1984-NMCA-064, ¶ 26, 101 N.M. 556, 563, 685 P.2d 964, 971); *see also* RESTATEMENT (SECOND) OF TORTS § 158 (1965) ("One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally … enters land in the possession of the other"). The 2021 trespass allegedly occurred on "Geneva Langworthy's property" located at 12 1/2 Towhee Lane. But the 2022 trespass allegedly occurred "on Jaybird Lane," and, unlike 12 1/2 Towhee Lane, the Complaint does not allege that Jaybird Lane is "Geneva Langworthy's

[2] The Court is aware that Defendant Alcon has filed a motion for summary judgment based on qualified immunity. *See* (Doc. 46). Before the Court can address the issue of qualified immunity, however, there must be statement of a claim which shows that Plaintiff "is entitled to relief." FED. R. CIV. P. 8(a)(2).

property." Instead, it alleges only that Jaybird Lane is a "private road," a statement too vague for the Court to infer that Plaintiff holds an exclusive possessory interest in it. And if Plaintiff did not possess a property right to preclude Alcon from driving his vehicle onto Jaybird Land, then both the trespass claim and any Fourth Amendment claim based on the 2022 incident would be legally insufficient, notwithstanding the additional allegation that Alcon "spotlighted Ms. Langworthy in her yard as he drove past." *See, e.g., United States v. Hay*, 95 F.4th 1304, 1314 (10th Cir. 2024) ("viewing settings that are in public view, or visible via generally available technology, does not constitute a search").[3]

Assuming that, as to the 2021 incident at least, Plaintiff has alleged facts to support a *trespass* claim, a trespass does not itself amount to a violation of the Fourth Amendment. "[T]he Supreme Court has made it clear that the Fourth Amendment does not track property law,"[4] and, indeed, has held in multiple cases "that a trespass by law-enforcement officers did not violate the Fourth Amendment." *Rieck v. Jensen*, 651 F.3d 1188, 1191 (10th Cir. 2011).[5] For instance,

[3] *See generally California v. Ciraolo*, 476 U.S. 207, 213 (1986) ("The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on public thoroughfares. Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observations from a public vantage point where he has a right to be and which renders the activities clearly visible.").

[4] *See, e.g., United States v. Karo,* 468 U.S. 705, 712-13 (1984) ("The existence of a physical trespass is only marginally relevant to the question of whether the Fourth Amendment has been violated, however, for an actual trespass is neither necessary nor sufficient to establish a constitutional violation."); *Oliver v. United States*, 466 U.S. 170, 183-84, (1984) ("[T]he general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment."); *Katz v. United States*, 389 U.S. 347, 353 (1967) ("[T]he premise that property interests control the right of the Government to search and seize has been discredited." (quoting *Warden v. Hayden*, 387 U.S. 294, 304 (1967)); *see also United States v. Alabi*, 943 F. Supp. 2d 1201, 1235 (D.N.M. 2013) ("the Fourth Amendment does not cover every investigation [ ] on private property" (internal quotation marks and citation omitted), *aff'd*, 597 F. App'x 991 (10th Cir. 2015).

[5] *See, e.g., Oliver*, 66 U.S. 170 (holding that officers did not violate the Fourth Amendment by their warrantless intrusion on secluded property despite the officers having walked around a locked gate and various "No Trespassing" signs); *United States v. Dunn*, 480 U.S. 294, 296 (1987) (holding that officers did not violate the Fourth Amendment when they entered a 198-acre ranch without a warrant, crossing a ranch-style perimeter fence that completely encircled the property as well as several interior barbed-wire fences).

"[w]hen the area searched is outside the home's curtilage, it is irrelevant whether the officers have trespassed on the property." *United States v. Bell*, 191 F. App'x 663, 667 (10th Cir. 2006). The curtilage is the area immediately surrounding the home. *See Oliver*, 466 U.S. at 180; *Rieck*, 651 F.3d at 1192. As the Supreme Court has explained, the Fourth Amendment "does not protect the merely subjective expectation of privacy, but only those 'expectation[s] that society is prepared to recognize as 'reasonable.''" *Oliver*, 466 U.S. at 177 (quoting *Katz*, 389 U.S. at 361). And the Supreme Court has held that there is no societal interest in protecting a person's privacy interest in property outside the curtilage of a home, generally referred to as "open fields." *See id.* at 176 ("[T]he special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers, and effects,' is not extended to the open fields. The distinction between the latter and the house is as old as the common law." (quoting *Hester v. United States*, 265 U.S. 57, 59 (1924))). Thus, even if Plaintiff has a property interest in the land outside the curtilage of her home, an officer can enter and search that land without a warrant without violating the Fourth Amendment, even though doing so would amount to a trespass on Plaintiff's private property. The Supreme Court has not "attempt[ed] to define the precise line between curtilage and open fields, though it did say that an open field need not be either open or a field." *Rieck*, 651 F.3d at 1192 n.2 (quoting *Oliver*, 466 U.S. at 180 n. 11, 10).[6]

Plaintiff has not alleged facts showing that Alcon's alleged trespass occurred on private property owned by her that is protected by the Fourth Amendment. In addition, however, Plaintiff also has not alleged facts to show that Alcon's intrusion onto the property was anything other than

[6] *See, e.g., Rieck*, 651 F.3d at 1193 (no Fourth Amendment violation where the only part of the property entered by the officer was the portion of the unpaved driveway within a few feet of the entrance gate, a considerable distance from the home which was abutting and clearly visible from a public highway); *Bell*, 191 F. App'x at 667 (wooded area held outside curtilage of the home, resulting in finding of no Fourth Amendment violation); *United States v. Cousins*, 455 F.3d 1116, 1124 (10th Cir. 2006) (side yard held outside curtilage of the home, resulting in finding of no Fourth Amendment violation).

de minimis. *See United States v. Gordon*, 741 F.3d 64, 72–73 (10th Cir. 2014) ("the Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable at their inception or in their execution"; a "de minimis intrusion[ ] into a person's possessory interest in property" may not be "constitutionally unreasonable"). Moreover, it is well established that "officers generally may 'go to a person's home to interview h[er],' because '[i]t is not improper for a police officer to call at a particular house and seek admission for the purpose of investigating a complaint or conducting other official business.'" *Wilson v. Jara*, 866 F. Supp. 2d 1270, 1290 (D.N.M. 2011) (quoting *United States v. Daoust*, 916 F.2d 757, 758 (1st Cir. 1990), and 1 W. LaFave, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 2.3(b), at 475 (3d ed. 1996)), *aff'd*, 512 F. App'x 841 (10th Cir. 2013). Such encounters do not require a warrant and "need not be supported by suspicion of criminal wrongdoing." *Id.* (quoting *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000)). Finally, Plaintiff has not alleged facts showing that an actual search occurred, i.e., that Alcon trespassed on Plaintiff's property in order to gather information and not for some other reason, such as to conduct a welfare check. *See Jones*, 565 U.S. at 408 n.5 (stating that, "there must be conjoined with [the infringing trespass] *an attempt to find something or to obtain information*," i.e., just as "the obtaining of information is not alone a search unless it is achieved by [ ] a trespass [that invades a protectible privacy interest]," an invasion of a protectible privacy interest through a physical trespass or other means "is not alone a search *unless it is done to obtain information*" (emphasis added)).

In short, an allegation that Alcon was trespassing on Plaintiff's property is not sufficient to show that Plaintiff is entitled to relief under the Fourth Amendment. Rather, to proceed with her Fourth Amendment claim or claims against Alcon, Plaintiff must allege additional facts about the area of her property on which Alcon allegedly trespassed, and from which it might be inferred that

the area in question "harbors the intimate activity associated with the sanctity of a [Plaintiff's] home and the privacies of life." *Oliver,* 466 U.S. at 300. And she must allege additional facts about Alcon's purpose in coming on the property or his actions when he entered the locations in question such that it is inferable that, if Alcon's trespass did in fact infringe on a protectible privacy interest of Plaintiff's, he did so in an attempt to obtain information and the infringement was not de minimis in nature. The current allegations only say that Alcon walked around inside Plaintiff's yard and shined a flashlight "into the house." The yard in question could be outside the curtilage of the house. Or Alcon could have been looking for Plaintiff not to find evidence or to obtain information about Plaintiff, but to investigate a complaint or to conduct other official business. And Alcon's shining of the flashlight might have been no more than a de minimus intrusion on Plaintiff's property. Without additional facts, the Court cannot say that Plaintiff has stated anything but a speculative claim for relief under the Fourth Amendment. *See, e.g., SEC v. Shields,* 744 F.3d 633, 640 (10th Cir. 2014) (holding that if the scope of the allegations in a complaint are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff has not nudged her claims across the line from conceivable to plausible).

### B. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides, "No State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Generally speaking, "[t]he Equal Protection Clause of the Fourteenth Amendment ... is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). Thus, "[t]he Equal Protection Clause provides a basis ... for contending that general rules are being applied in an arbitrary or discriminatory way." *Jones v. Helms*, 452 U.S. 412, 423–24 (1981). "To survive a motion to dismiss, plaintiffs raising these claims must allege 'intentional unlawful discrimination or allege facts that are at least

susceptible of an inference of discriminatory intent' in their complaints." *Clark v. Washington State Dep't of Health*, 735 F. Supp. 3d 1334, 1347 (W.D. Wash. 2024) (quoting *Monteiro v. Tempe Union High Sch. Dist*., 158 F.3d 1022, 1026 (9th Cir. 1998)).

> An equal protection claim can be established in one of two ways: a "class-based" theory or a "class-of-one" theory. A "class-based" theory alleges that the defendant discriminated against the plaintiff on the basis of her membership in an "identifiable class," while a "class-of-one" theory alleges that the plaintiff has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.

*Id.* (internal quotation marks and citations omitted).

Plaintiff alleges that Defendant Alcon violated her right to equal protection because he investigated allegations by her neighbor Todd Tatum of trespass by her onto Tatum's property, but did nothing when she reported Todd Tatum's trespass onto her property. Plaintiff's allegations do not identify any class-based discrimination as a motivating factor for the alleged discriminatory treatment, and therefore she appears to be trying to allege a "class of one" claim. To adequately allege such a claim, Plaintiff must allege facts showing that she was treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *McGuire v. Nielsen*, 448 F. Supp. 3d 1213, 1253 (D.N.M. 2020); *see Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (concluding that, to prevail on a "class-of-one" claim, a "plaintiff must show he or she (as opposed to a class in which he is a member) was 'intentionally treated differently from others similarly situated'").

> In the years after the Supreme Court's decision in *Village of Willowbrook v. Olech*, the Tenth Circuit expressed strong reservations about entertaining class-of-one challenges:
>
>> [T]he concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors. It is always possible for persons aggrieved by government action to allege, and

> almost always possible to produce evidence, that they were treated differently from others, with regard to everything from zoning to licensing to speeding to tax evaluation. It would become the task of federal courts and juries, then, to inquire into the grounds for differential treatment and to decide whether those grounds were sufficiently reasonable to satisfy equal protection review. This would constitute the federal courts as general-purpose second-guessers of the reasonableness of broad areas of state and local decisionmaking: a role that is both ill-suited to the federal courts and offensive to state and local autonomy in our federal system.

> *Jennings v. City of Stillwater*, 383 F.3d [1199,] at 1210-11 [(10th Cir. 2004)]. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d [1210,] at 1216-17 [10th Cir. 2011)] ("The latitude afforded police officers, IRS agents, university administrators, zoning officials, and other, similar government actors necessarily results in a sizeable amount of random variation in outcome. If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed."). "It is therefore imperative for the class-of-one plaintiff *to provide a specific and detailed account of the nature of the preferred treatment of the favored class*." *Jennings v. City of Stillwater*, 383 F.3d at 1214.

*McGuire*, 448 F. Supp. 3d at 1253 (emphasis added).

With these legal principles in mind, it is clear that Plaintiff's allegations lack sufficient factual content to be able to say that she has plausibly alleged an equal protection claim. First, there is the question of standing. *See Doe v. Anoka Cnty.,* No. 25-1568, 2026 WL 2293287, at *3 (8th Cir. Aug. 10, 2026) (holding that crime victims lack standing to assert equal protection claims against prosecutors and law enforcement officials for alleged failures to investigate (citing, *inter alia*, *Pratt v. Helms*, 73 F4th 592, 595 (8th Cir. 2023) (holding that the plaintiff lacked standing to bring § 1983 claims against officials from the Camden County Sheriff's Department for their alleged failure to investigate an assault against him, concluding that "a victim has no constitutional right to an investigation of a crime committed against him—at least where ... the victim brings a class-of-one equal protection claim")); *see also Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973)

(holding that a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another and therefore lacks standing to sue an official for his alleged failure to prosecute an alleged criminal).

Second, Plaintiff's factual allegations suggest in only the barest of terms that she was similarly situated to Todd Tatum. *See Selsor v. Workman*, 644 F.3d 984, 1016 (10th Cir. 2011) (stating that "the degree to which others are viewed as similarly situated [for equal protection analysis purposes] depends substantially on the facts and context of the case, and that, consequently, many legitimate variables may serve to distinguish the plaintiff from those other persons"). In fact, even the truncated facts Plaintiff includes in the Complaint suggest a significant difference between her trespass complaint against Tatum and Tatum's trespass complaint against her: Alcon told Plaintiff that "he didn't know whether the road [Jaybird Lane, where Tatum's trespass allegedly occurred] was private." (Doc. 1-2 at 3). Plaintiff alleges Alcon's statement showed "gross incompetence." (*Id.*). But gross incompetence is not the same thing as intentional discrimination, which is what is required to state a valid equal protection claim. In any event, [t]he necessary factor making" a class-of-one equal protection claim viable is "the existence of a clear standard against which departures, even for a single plaintiff, c[a]n be readily assessed." *McGuire*, 448 F. Supp. 3d at 1254 (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 602 (2008)). An officer's duty to investigate reports of trespass is not subject to a clear standard against which departures can be easily assessed. *See Flowers v. City of Minneapolis, Minn.,* 558 F.3d 794, 799-800 (8th Cir. 2009) (pointing out that the Supreme Court in *Engquist* used law enforcement officers to illustrate forms of state action that by their nature involve discretionary decisionmaking). Thus, as was held in *Flowers*, one could conclude that a police officer's investigative decisions simply "may not be attacked in a class-of-one equal protection claim." *Id.* at 800.

Third, although a police officer's investigative decision may "remain subject to traditional class-based equal protection analysis," *id.*, such a claim would require a discriminatory or impermissible class-based motive by the officer in deciding whether, when, and how to investigate a crime. *See, e.g., id.* at 798 (citing *St. German of Alaska E. Orthodox Catholic Church v. United States*, 840 F.2d 1087, 1095 (2d Cir. 1988)). And currently Plaintiff has not alleged a sufficient claim under this framework. That is, she does not allege she is a member of a suspect class, or that a fundamental right is implicated, nor has she alleged any facts to suggest that the differing treatment she allegedly received was motivated by a class-based discriminatory purpose. *See Village of Willowbrook*, 528 U.S. at 564. Accordingly, as alleged, Plaintiff's equal protection claim must be dismissed.

### C. Instructions For Filing An Amended Complaint

If Plaintiff asserts the Court should not dismiss her Fourth and Fourteenth Amendment claims against Defendant Alcon, she must file an amended complaint that complies with the Federal and Local Rules of Civil Procedure, including, as discussed above, the requirement of a "short and plain statement" of her claims "showing that [she] is entitled to relief." In addition, Plaintiff must refrain from adding any new parties or claims to any amended complaint she files in response to this Order To Show Cause. This is because the issue of whether Plaintiff is entitled to amend the Complaint to add new parties and/or new claims cannot be addressed until after Plaintiff demonstrates that the current Complaint is not subject to dismissal. In the event Plaintiff's Complaint is not dismissed, Plaintiff will have the opportunity to present argument that she should be allowed to add claims and/or parties to this case through a later filed motion in which she seeks leave of Court to file a second amended complaint.

The Court is particularly concerned with Plaintiff attempting to add new claims and parties to this case because, as indicated by her past failed attempts to amend the Complaint, the new claims and parties she apparently wishes to add do not appear to have any relation to the claims in the Complaint against Defendant Alcon. Rule 18(a) provides that "a party asserting a claim … may join, as independent or alternative claims, as many claims as it has against an opposing party," FED. R. CIV. P. 18(a), while Rule 20(a)(2) provides that "[p]ersons … may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action," FED. R. CIV. P. 20(a)(2). Plaintiff's previous filings lack factual allegations that plausibly connect the new claims and actions of the additional persons and entities Plaintiff seeks to sue to Plaintiff's claims in the Complaint against Defendant Alcon as would be necessary for those new claims and parties to satisfy either Rule 18(a) or Rule 20(a)(2).

In addition, although the issue is not currently before the Court, it is questionable whether Plaintiff should be permitted to expand this lawsuit into totally new territory. Including the present lawsuit, Plaintiff has been a pro se plaintiff in eleven cases in this District over the past three years, most of which were terminated shortly after they were filed due to procedural failures on Plaintiff's part, jurisdictional obstacles, and/or the absence of a sufficiently alleged claim for relief. Plaintiff's lawsuits in this District include the following:

(i) *Langworthy v. New Mexico State Police*, 1:23-cv-684-DHU-JFR (*filed* 8/17/2023; *terminated* 9/20/2023) (dismissed for lack of subject-matter-jurisdiction due to Eleventh Amendment immunity).

(ii) *Langworthy v. Colfax County Sheriff, et al.*, 1:23-cv-997-DHU-JFR (*filed* 11/13/2023; *terminated* 2/21/2024) (dismissed for failure to state a claim, and because Plaintiff did not comply with the Court's Order to file an amended complaint).

(iii) *Langworthy v. Seidel*, *et al.*, 1:23-cv-1028-JCH-JFR (*filed* 11/20/2023; *terminated* 2/21/2024) (dismissed for failure to state a claim, and because Plaintiff did not file an amended complaint in response to the Court's Order to Show Cause).

(iv) *Langworthy v. Alcon*, 1:24-cv-1291-MLG-KRS (*filed in state court* 11/27/2024; *removed* 12/23/2024) (**present case**).

(v) *Langworthy v. New Mexico*, *et al.,* 1:24-cv-1229-KG-LF (*filed* 12/5/2024; *terminated* 3/27/2025) (alleging that Colfax County and the State of New Mexico denied Plaintiff access to courts and equal protection under the New Mexico Inspection of Public Records Act) (dismissed without prejudice for failure to state a claim for relief, and failing to file an amended complaint in response to Court's Order To Show Cause; motion to re-open granted; motion to disqualify district judge denied; appeal filed and then terminated upon Plaintiff's filing of stipulation of voluntary dismissal).

(vi) *Langworthy v. Colfax County, et al.*, 1:25-cv-18-WJ-JHR (KK) (*filed* 1/8/2025; *terminated* 3/18/2025) (dismissed by Chief District Judge Kenneth J. Gonzales for failure to state a claim for relief (Doc. 28)); (motion to reopen case and for change of judge denied by Senior District Judge William P. Johnson (Doc. 42)); **(order imposing filing restrictions in current and future cases by Senior District Judge William P. Johnson (Doc. 43, entered on 7/28/2025)**).

(vii) *Langworthy v. United States Postal Service*, 1:25-cv-432-KWR-SCY (*filed in* D.D.C. 2/5/2025; *transferred to* D.N.M. 5/7/2025; *terminated* 6/16/2025) (dismissed for failure to state a claim for relief, and for failing to file an amended complaint in response to the Court's Order to Show Cause).

(viii) *Langworthy v. Chavez, et al*., 1:25-cv-402-WJ-SCY (*filed in state court* 3/20/2025; *removed* 4/28/2025; *terminated* 12/8/2025) (motions to dismiss filed by state defendants denied as moot and complaint dismissed without prejudice because Plaintiff failed to respond to the Court's Order To Show Cause regarding failure to keep the Clerk's Office apprised of a current address in violation of Court rules).

(ix) *Langworthy v. Cadwell*, 1:25-cv-398-WJ-JFR (*filed* 4/28/2025; *terminated* 5/27/2025) (claims against the New Mexico Administrative Office of the Courts for alleged violations of Plaintiff's rights under the ADA) (dismissed without prejudice for failing to state a claim for relief, and not filing an amended complaint in response to Court's Order To Show Cause).

(x) *Langworthy v. Chavez*, *et al.,* 1:25-cv-409-SMD-LF (*filed* 4/30/2025; *terminated* 10/20/2025 (alleging that Plaintiff was denied access to the courts by the judges, clerks, and 8th Judicial District Court of New Mexico)

(dismissed without prejudice as sanction for Plaintiff's filing of an amended complaint that did not comply with the Court's Order To Show Cause).

(xi) *Langworthy v. Gonzales, et al.*, 1:25-cv-433-REB-SBP (*filed* 5/6/25; *terminated* 7/2/2025) (alleging that Plaintiff was denied access to the courts by Chief District Judge Kenneth J. Gonzales, District Judge David Urias, and Magistrate Judge Kirtan Khalsa) (dismissed for failure to state a claim for relief, and because Plaintiff did not file an amended complaint in response to the Court's Order to Show Cause).

Notably, the docket from one of the above cases—*Langworthy v. Colfax County*, No. 1:25-cv-18-WJ-JHR—indicates that Plaintiff is currently under filing restrictions imposed by Senior District Judge William P. Johnson on July 28, 2025. Judge Johnson's Order Imposing Filing Restrictions states in relevant part as follows:

> Plaintiff is … enjoined from initiating future litigation in this Court and the Clerk is directed to not file any initial pleading that Plaintiff submits, unless either a licensed attorney who is admitted to practice before this Court signs the pleading or Plaintiff first obtains permission to proceed *pro se*.
>
> To obtain permission to proceed *pro se* in this Court, Plaintiff must take the following steps:
>
> 1. File with the Clerk of Court a petition requesting leave to file a *pro se* initial pleading, a notarized affidavit, the proposed initial pleading, and a copy of these filing restrictions;
>
> 2. The affidavit must be notarized, be in proper legal form and recite the claims that Plaintiff seeks to present, including a short discussion of the legal bases for the claims, and the basis of the Court's jurisdiction of the subject matter and parties. The affidavit must certify that, to the best of Plaintiff's knowledge, Plaintiff's claims are not frivolous or made in bad faith; that they are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the new suit is not initiated for any improper purpose such as delay or needless increase in the cost of litigation; and that Plaintiff will comply with all Federal Rules of Civil Procedure and the District of New Mexico's Local Rules of Civil Procedure. If Plaintiff's claims have previously been raised or Plaintiff has previously sued the defendants, the affidavit must certify that the proposed new suit does not present the same claims that this or any other court has decided and explain why the new suit would not be an abuse of the system;

> 3. The Clerk of the Court shall open a new civil case, file the petition, the affidavit, the proposed pleading and the copy of these restrictions in the new civil case, and randomly assign a Magistrate Judge to determine whether to grant Plaintiff's petition to proceed pro se in the new civil case. If the Magistrate Judge approves Plaintiff's petition to proceed pro se, the Magistrate Judge shall enter an order indicating that the matter shall proceed in accordance with the Federal Rules of Civil Procedure and the District of New Mexico's Local Rules of Civil Procedure. If the Magistrate Judge does not approve Plaintiff's petition to proceed *pro se*, the Magistrate Judge shall instruct the Clerk to assign a District Judge to the new case.

*Langworthy*, 1:25-cv-18-WJ-JHR, Doc. 43 at 2-3 (internal citations omitted).

In short, the purpose of this Order To Show Cause is to address deficiencies in Plaintiff's current claims by requiring Plaintiff to file an amendment to those claims only. This Order does not grant Plaintiff leave to amend the Complaint for any other purpose, such as to add new claims or parties. Before Plaintiff may file an amended complaint that adds new claims or parties, Plaintiff must first file an amended complaint in response to this Order To Show Cause. The Court then must find that the amended complaint filed in response to this Order To Show Cause adequately pleads a claim for relief against Defendant Alcon. If the Court finds that it does, then Plaintiff may file a motion pursuant to Federal Rule of Civil Procedure 15(a)(2) seeking leave of court to file a second amended complaint, which motion must comply with the Federal and Local Rules of Civil Procedure and the Court's previous orders. Plaintiff's motion for leave to amend to add new claims and parties will then be addressed by the undersigned through an order setting forth proposed findings and recommended disposition on the motion, which will then be addressed by the presiding judge. For the undersigned to recommend permitting such an amended filing, Plaintiff must present legal and factual arguments in her motion seeking leave to amend for why the new claims she seeks to assert are appropriate under Rules 18 and 20, and are not barred by the restrictions imposed in Senior District Judge Johnson's Order Imposing Filing Restrictions.

Again, any steps Plaintiff takes to add new claims and parties must be separate from the amended complaint that Plaintiff files in response to the present Order To Show Cause, and should not occur until after a judicial finding is made that any amended complaint Plaintiff files in response to this Order states a legally sufficient Fourth and/or Fourteenth Amendment claim against Defendant Alcon. Regardless of what the undersigned recommends, it will ultimately be up to the presiding judge to decide whether Plaintiff's amended complaint filed in response to this Order To Show Cause adequately pleads a claim against Defendant Alcon and, if it does, whether to permit Plaintiff to file a second amended complaint that adds claims and parties beyond those included in the amended complaint. Plaintiff is forewarned that if she files an amended complaint in response to this Order that includes new claims and parties—or one that includes vexatious, abusive, or otherwise offensive language as described in the Court's Order Striking Pro Se Filings And Revoking Permission To File Electronically, entered contemporaneously herewith—the amended complaint may be stricken from the docket and Plaintiff's claims against Defendant Alcon dismissed without further notice.

**CONCLUSION**

For the foregoing reasons, Plaintiff shall, within 21 days of entry of this Order: (a) show cause why the Court should not dismiss her claims against Defendant Alcon; and (b) file an amended complaint in compliance with this Order. Failure to timely show cause and file an amended complaint may result in dismissal of this case.

IT IS SO ORDERED this 18th day of September, 2026.

Kevin Sweazea

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE